Argued March 3, decided March 17, 1914.

# RIVERSIDE CEMENT CO. *v.* MASSON.

(139 Pac. 723.)

**Trial—Reception of Evidence—Reopening Case.**

1. The reopening of a case on motion of plaintiff several days after rendition of judgment for plaintiff, but before its entry of record, and during the same term, to permit plaintiff to introduce evidence of its incorporation and authority to do business within the state, is within the discretion of the trial court.

[As to right of trial court to reopen case after submission to jury for reception of further evidence, see note in Ann. Cas. 1913C, 1010.]

**Trial—Reception of Evidence—Reopening Case—Right of Other Party to Introduce Evidence.**

2. Where, after the rendition of judgment for plaintiff, but before its entry, the court reopened the case to permit plaintiff to introduce evidence of its incorporation and right to maintain suit, the refusal to permit defendant to then introduce evidence, after his failure to do so at the original hearing because of plaintiff's failure at that time to show its right to do business in the state or maintain the action, was reversible error.

From Multnomah: HENRY E. McGINN, Judge.

This is an action by the Riverside Portland Cement Company against Frank Masson. There was a judgment in favor of plaintiff and the defendant being dissatisfied, prosecutes this appeal. The facts brought out are set forth in the opinion of the court.

REVERSED: NEW TRIAL ORDERED.

For appellant there was a brief over the name of *Messrs. Sheppard & Brock,* with an oral argument by *Mr. R. J. Brock.*

For respondent there was a brief over the names of *Mr. M. M. Matthiessen* and *Messrs. Wood, Montague & Hunt,* with an oral argument by *Mr. Matthiessen.*

Department 1. MR. JUSTICE RAMSEY delivered the opinion of the court.

This is an action to recover a balance of $330.60 and interest alleged to be due the defendant for goods and

merchandise, sold by the plaintiff to the defendant, in the month of October, 1911. The complaint is substantially a *quantum valebant* count in *assumpsit,* and it alleges that the plaintiff, in the month of October, 1911, at the special instance and request of the defendant, sold and delivered to the defendant goods, wares and merchandise, of the reasonable value of $1,621.10, and admits that $1,290.50 thereof has been paid, leaving still unpaid a balance of $330.60. By a bill of items, furnished by the plaintiff, it appears that the merchandise sold consisted of 664 barrels of Portland cement, for which the plaintiff charged $2.40 per barrel, and freight for which the plaintiff charged $27.50; the aggregate amount charged for the cement and freight being $1,621.10. The credits admitted amount to $1,290.50, leaving a balance unpaid, according to the complaint, of $330.60. The answer was, in effect, a denial of every allegation of the complaint, including the allegation of the incorporation of the plaintiff, and of the fact that it was lawfully doing business in this state. The complaint alleges that the plaintiff was incorporated under and by virtue of the laws of the State of California, etc.

The answer, after denying the allegations of the complaint, alleged that the defendant had, during the latter part of the year of 1911, purchased a large amount of cement from R. A. Hume, and from no one else, and that he had paid Hume in full for all cement purchased, and denied that he had ever purchased any cement or sacks from the plaintiff.

The reply denied the allegations of the answer. The evidence showed that the defendant had purchased through R. A. Hume or the R. A. Hume Company, in October, 1911, about the amount of cement that the plaintiff, by its complaint, claims to have sold to him, and it tends to prove that the defendant had, prior to

October, 1911, purchased from said Hume large quantities of cement, and that he had paid him for it. The evidence tends, also, to show that, when the defendant purchased said cement in October, 1911, he understood that he was dealing with Hume alone, and that he did not know that Hume or the R. A. Hume Company was acting as agent for the plaintiff, and that he had no notice of that fact. However, the evidence shows that R. A. Hume or the R. A. Hume Company, of which R. A. Hume was manager, was in fact the agent of the plaintiff in making said sales, although said agent did not disclose to the defendant his or its principal. There is some doubt, from the evidence, as to the amount that the defendant paid for said cement, etc.; but the plaintiff admits by its complaint, that he paid $1,290.50. The case was tried without a jury, and the court made and filed its findings of fact and conclusions of law.

When the plaintiff rested its case in chief, the defendant filed and presented a motion for a judgment of nonsuit, for the reason, as the defendant claimed, that the plaintiff had shown, by its evidence, that the defendant had paid the plaintiff $1.40 more than the 664 barrels of cement, sacks and freight amounted to. The only witness that testified as to the value of the cement was R. A. Hume, a witness for the plaintiff. According to his evidence, the cement was worth $1.90 per barrel net, free of sacks. Figuring the cement at $1.90 per barrel, and the sacks and freight at what the plaintiff charged for them, and crediting the defendant with the payments that the plaintiff's complaint admits were made, we find that the defendant had overpaid the plaintiff to the extent of $1.40.

There was no evidence as to the value of the cement excepting that of Mr. Hume referred to *supra,* and some sheets from the ledger of the R. A. Hume

Company, and some other statements entered by the employees of said company, showing what the defendant had been charged for the cement. These sheets and statements were received in evidence without objection, and showed that the cement was charged to the defendant at the price of $2 per barrel. No witness testified that the cement was worth the prices charged.

The *onus* of proving the value of the cement was on the plaintiff, and the only witness, by it called, to prove that fact, testified that the cement was worth $1.90 per barrel. Charging the defendant for the cement at that rate, the plaintiff was paid for it $1.40 more than it was worth, and the plaintiff has no cause of action against him. The statements of account put in evidence by the plaintiff appear to be of little value, because no one testified that the cement was worth the price charged for it therein, but we do not find it necessary to set aside the judgment on that ground, or to decide that there was no evidence to support the findings of the court below in relation to the value of the cement, as the case will be decided upon another point.

1. The court overruled the motion for a judgment of nonsuit, and, the defendant not introducing any evidence in support of his defense, the court gave judgment in favor of the plaintiff for the full amount demanded by the complaint; but this judgment was not entered of record until the plaintiff gave in evidence proof of its incorporation and right to transact business in this state, as stated *infra.*

·The plaintiff is a California corporation, and the allegations of the complaint as to its corporate character, and as to its right to do business in this state, were denied by the answer. The plaintiff failed to offer any evidence on these points, excepting as stated below. Several days after the court had rendered judgment for the plaintiff, the plaintiff petitioned the

court to reopen the case and permit the plaintiff to introduce proof of its incorporation and of its right to do business in this state, and the court granted said motion, opened up the case, and, over the objection of the defendant, permitted the plaintiff to offer said proof. At the time that the plaintiff was permitted to introduce said proof, the defendant asked the court to permit him to introduce proof, in his behalf, in support of his defense in chief, stating that the defendant had not previously introduced any evidence as to his defense, because of the fact that, at the time the plaintiff rested its case, it had failed to produce evidence to show that the plaintiff had any right to maintain this action, etc. The court overruled the defendant's application and refused to permit him to introduce any evidence.

The defendant contends that the trial court erred in opening up said cause and in permitting the plaintiff to introduce additional evidence several days after judgment had been given, and, also, that the court erred, after opening up the case and permitting the plaintiff to offer its additional evidence, in refusing to permit the defendant to introduce evidence as to his defense.

When the plaintiff rested in the first instance, the defendant moved for a nonsuit, and this motion was denied. He did not then offer any proof of his defense; but, after the court set aside the judgment and permitted the plaintiff to introduce additional evidence, the defendant asked to be permitted to offer evidence to support his defense. This the trial court refused.

This case was tried without a jury, and the court granted judgment in favor of the plaintiff, but within the same term, and only a few days after the judgment was granted, and before it was entered, the trial court

set aside the judgment and permitted the plaintiff to put in additional evidence. Was this reversible error?

In 1 Black, Judgments (2 ed.), Section 305, the author says, as to the power of a court to set aside or open up a judgment during the term at which it was entered:

"It is universally held that judgments are under the plenary control of the court which pronounces them during the entire term at which they are rendered, or entered of record, and they may, during such term, be set aside, vacated, modified or annulled by that court for cause shown. It is commonly said that judgments and decrees remain in the breast of the court during the term of their rendition; and, for the purpose of modifying or vacating them, the whole term may be considered as one day. This power may be exercised during the term on the court's own proper motion, as well as on application by a party, when there is a manifest error or inadvertence to be corrected, and even, in proper cases, without notice to the parties. Its exercise is not prevented by the fact that a bill of exceptions has been taken or an appeal bond filed. It is a power inherent in all courts of general jurisdiction and is not dependent upon or derived from statutes."

In 17 Am. & Eng. Ency. Law (2 ed.), pages 813, 814, the rule is stated thus:

"Every court has absolute control over its own judgments and decrees during the term at which they were rendered, and may therefore, at any time before the expiration of the term, in the exercise of its discretion, open, amend, correct, revise, vacate or supplement any judgment or decree rendered during such term."

In *San Francisco Breweries* v. *Schurtz,* 104 Cal. 428 (38 Pac. 93), the court says:

"It appears from the bill of exceptions that nearly three weeks after the case was tried and submitted, and findings and decree of foreclosure were ordered, the appellant asked leave to introduce testimony show-

ing that Schurtz's lease had been broken and canceled; that the lessor had canceled the lease by bringing suit against him for rent due; and that from and after March 10, 1891, he had held the leased premises from month to month as a monthly tenant. The court refused to hear the offered testimony, and its ruling is assigned as error. The ruling was proper, and must be sustained for two reasons: (1) The application was addressed to the discretion of the court, * * and there is nothing tending to show an abuse of that discretion. So far as appears, the evidence might as well have been offered during the trial. (2) No issue was raised by the pleadings to which the offered evidence was relevant.''

The ruling in that case supports the contention that a court may, in its discretion, open up a case after a judgment has been pronounced and permit relevant evidence to be submitted.

In the case of *Leary* v. *Leary,* 68 Wis., pages 666, 667 (32 N. W. 625), the court says:

''After having announced his opinion upon the evidence as it stood when the case was first submitted for his decision, he [the trial court] opened the case for further evidence, upon the motion of the plaintiff, that he had discovered other and material evidence for the plaintiff since the case had been submitted. As the case stood when it was submitted, there can be no doubt that the new evidence was material to the plaintiff's case, and in an evenly balanced case might be decisive in his favor. We think the court was justified in opening the case for further evidence.''

In that case the cause had been finally submitted, and the court had announced its decision, and the court thereafter opened the case and permitted the plaintiff to produce additional material evidence, and the Supreme Court held that there was no error in doing so.

This case was tried by the court without a jury, and the opening up of the case probably caused no great

expense or inconvenience.   While the court, in opening
it up and permitting the plaintiff to introduce new evi-
dence that it should have put in its evidence in chief,
went to the limit of its authority, we are unable to say
that it abused its discretion in doing so.   However,
such authority should never be exercised except for
good reasons and upon a proper showing.

2. This brings us to the consideration of a more
serious question.   After the court opened up the case
to permit the plaintiff to put in material evidence that
should have been offered before it rested its case in
chief, and the plaintiff had submitted such evidence,
the defendant asked leave to be permitted to offer
evidence as to its defense in chief, and, as a reason for
doing so, he contended that the plaintiff failed to offer,
before it rested its case in chief, any evidence tending
to show that it had any right to do business or to main-
tain an action in this state (it being a foreign corpora-
tion), and hence it was not necessary for the defendant
to offer any proof of the facts constituting his defense,
until such proof was put in, and that, after the court
had opened the case and permitted the plaintiff to
prove that it had a right to do business and sue in this
state, the defendant should be permitted to introduce
evidence to support his defense.   But the trial court
refused to permit the defendant to introduce any
evidence.

It is contended that it was a matter within the sound
discretion of the trial court to permit or refuse to
allow the defendant to introduce evidence to substan-
tiate his defense, and that the court's decision in refus-
ing to permit such evidence to be introduced is not
reviewable.   The court had gone to the verge of the
law in opening up the case, after it had announced its
decision, in order to permit the plaintiff to introduce
evidence material to its cause of action.   Until the

plaintiff had made out a *prima facie* cause, the defend-
ant was not guilty of negligence in not offering his evi-
dence to sustain his defense, and when the case was
opened up, and the plaintiff was permitted to put in
additional testimony, the defendant should have been
permitted to introduce evidence to sustain his defense.
But the further question arises: Did the trial court
abuse its discretion in refusing to permit the defend-
ant to put in his evidence?

In *Osborne* v. *United States Bank,* 9 Wheat. 866
(6 L. Ed. 204), Mr. Chief Justice Marshall says:

"Judicial power, as contradistinguished from the
power of the laws, has no existence. Courts are the
mere instruments of the law, and can will nothing.
When they are said to exercise a discretion, it is a mere
legal discretion, a discretion to be exercised in discern-
ing the course of prescribed law; and, when that is dis-
cerned, it is the duty of the court to follow it. Judicial
power is never exercised for the purpose of giving
effect to the will of the judge; always for the purpose
of giving effect to the will of the legislature; or, in
other words, to the will of the law."

Lord Camden (quoted in *State* v. *Bernoudy,* 36 Mo.
279) says:

"That the discretion of a judge is the law of tyrants;
it is always unknown; it is different in different men;
it is casual, and depends upon constitution, temper,
and passion. In the best, it is oftentimes caprice; in
the worst, it is every vice, folly, and passion to which
human nature can be liable."

In *Murray* v. *Buell,* 74 Wis. 19 (41 N. W. 1011, 1012),
the court says:

"The term 'abuse of discretion,' exercised in any
case by the trial court, as used in the decisions of
courts and in the books, implying, in common parlance,
a bad motive or wrong purpose, is not the most appro-
priate. It is really a discretion exercised to an end or

purpose not justified by, and clearly against reason, and evidence.''

In *Thompson* v. *Connell,* 31 Or. 235 (48 Pac. 468, 65 Am. St. Rep. 818), the court says:

''True, the grant of such relief rests within the discretion of the court, but the discretion here spoken of is an 'impartial discretion, guided and controlled in its exercise by fixed legal principles; * * a legal discretion to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to defeat the ends of substantial justice,' and for a manifest abuse thereof it is reviewable by an appellate jurisdiction.''

In *Bailey* v. *Taaffe,* 29 Cal. 424, the court says:

''The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia,* but a legal discretion, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice.''

In Volume 3 of Words and Phrases, page 2098, that work says:

''The term 'discretion' implies the absence of a hard-and-fast rule, and the establishment of a clearly defined rule would be the end of discretion; but the term is not a word for arbitrary will and unstable caprice. Judicial discretion should not be, as Lord Coke pronounced it, 'a crooked cord,' but rather, as Lord Mansfield defined it, 'exercising the best of their judgment upon the occasion that calls for it.' ''

The cases do not agree precisely in defining judicial discretion, or in stating the circumstances under which a ruling, resting in the discretion of the trial court, may be reviewed by an appellate court, but it is generally held that, where the trial court has abused its discretion, its action may be reversed upon appeal. It

is clear upon both reason and authority that the discretion vested in courts is not an arbitrary one to be exercised according to the will or the whim of the trial judge, but that it is a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. To say that a trial judge has abused the discretion vested in him does not imply that he has acted from improper motives, but that his ruling, under the circumstances of the particular case, was not in conformity with the spirit of the law, and that, in the particular case, it had the effect to impede or defeat the ends of substantial justice.

In this case, the application of the plaintiff to have the case opened up, and for leave to submit additional proof, and that of the defendant to be permitted, after the plaintiff had submitted its additional proof, to submit his evidence to substantiate his defense, should be viewed together. The evidence which the plaintiff was permitted to put in was evidence that should have been introduced in its case in chief, and, as soon as it was in, all of the plaintiff's evidence in chief was in. It had not all been put in until that was offered. We hold that the court should have permitted the defendant, after the plaintiff's evidence in chief was all in, as stated *supra,* to introduce his evidence to substantiate his defense, and that the refusal of the trial court to do so was unfair to the defendant and subversive of the principles of justice, and unjustly deprived the defendant of his right to make his defense, and that said ruling is reversible error.

The judgment of the court below is therefore reversed, and a new trial is ordered.

REVERSED: NEW TRIAL ORDERED.

MR. JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.