PRIDDY et al. v. TABOR et al. (No. 8373.)*

(Court of Civil Appeals of Texas. Ft. Worth. May 6, 1916. Rehearing Granted June 24, 1916. Rehearing Denied Oct. 21, 1916.)

1. HOMESTEAD ⬦➣118(3)—COMMUNITY PROPERTY—DEEDS—VALIDITY.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 3594, providing that if the wife becomes insane, the husband shall have exclusive control of community property, and she need not join in conveyances thereof, and Const. art. 16, § 50, prohibiting sale of homestead by husband without wife's consent a deed of the husband during the wife's insanity, granting the homestead, though in consideration of debts of the community, but without a showing of necessity thereof, is invalid.

[Ed. Note.—For other cases, see Homestead, Cent.Dig. §§ 192, 195. 204; Dec.Dig. ⬦➣118(3).]

2. APPEAL AND ERROR ⬦➣934(2) — SCOPE — PRESUMPTIONS.

If it is a controlling issue whether the deed of the husband alone, during the wife's insanity, granting community property, was for necessities of the community, and there is evidence sufficient to sustain finding that the sale was not necessary, and the court, without making such finding declared the sale invalid, such finding would be presumed in aid of the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3777; Dec. Dig. ⬦➣934(2).]

3. HOMESTEAD ⬦➣118(2)—COMMUNITY PROPERTY — SALES BY HUSBAND — "NECESSARY SALE."

Where the only community property was the homestead, which the husband sold for payment of debts of the community, such sale was not a necessary sale in a legal sense, since the homestead in no event was subject to payment of the debt.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 203, 204; Dec. Dig. ⬦➣118(2).]

4. TRIAL ⬦➣71 — HEARING OF EVIDENCE — POWERS OF COURT.

Independent of statute, courts retain control over judgments during term time and may set aside, correct, or reform them, so that it was not error for the court on motion for new trial to open the case to hear additional evidence; it being presumed that such evidence was made necessary by the motion for new trial.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 167; Dec. Dig. ⬦➣71.]

5. TRIAL ⬦➣72 — HEARING OF EVIDENCE — POWERS OF COURT.

That the court, after reopening a case to hear testimony on a single issue, refused to hear additional testimony by the adverse parties who did not allege that their testimony was in rebuttal of that then introduced, but who sought to introduce new testimony which could not in any way affect the result, was not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 168; Dec. Dig. ⬦➣72.]

Appeal from District Court, Wichita County; E. W. Nicholson, Judge.

Suit by Dora Tabor, for herself and as next friend of Etta May and Myrtle Alice Tabor, infants, against W. M. Priddy, in which Charles Hill and M. H. Moore were, on defendant's motion, impleaded. Decree for plaintiffs in part, with judgment over for Priddy against Hill and for Hill against Moore, and Moore and Hill appeal. Affirmed.

Carrigan, Montgomery & Britain, of Wichita Falls, for appellants. S. O. Jones and Fitzgerald & Cox, all of Wichita Falls, for appellees.

DUNKLIN, J. Lots Nos. 1 and 2, adjoining each other and situated in McBride's first addition to the city of Wichita Falls, was the community property of S. H. Tabor and his wife, Dora Tabor, and lot No. 2 and a strip off the rear end of lot No. 1, 65 feet in length and of the entire width of the lot, constituted the homestead of the family.

On June 22, 1912, Mrs. Dora Tabor was duly adjudged insane by the county court of Wichita county. As a part of that decree the court ordered that she be conveyed to one of the asylums of the state for the insane. She was then placed in the county jail by the sheriff, presumably to await accommodations in the asylum, as it is a matter of common knowledge that such institutions are inadequate to care for all such wards of the state.

On June 27th following, S. H. Tabor executed a bond payable to the state, conditioned that he himself would restrain and properly care for his wife as long as her mental unsoundness should continue, or until he should return her to the custody of the sheriff; and upon the execution of that bond she was discharged from the jail and her custody intrusted to her husband.

On August 6, 1912, S. H. Tabor returned her to the custody of the sheriff by reason of the fact that her mental condition had grown worse, and he was unable to properly care for her. Thereupon she was again incarcerated in the county jail, and there confined until September 23, 1912, when she was finally discharged, and she has been of sound mind ever since.

On September 4, 1912, during her last incarceration in the county jail and while she was insane, S. H. Tabor sold all of lot No. 1 to M. H. Moore by a deed of conveyance

executed by him alone and without the signature and acknowledgment of his wife, as required by the Constitution and statutes for a valid conveyance of the homestead. It is reasonably apparent from the record that while Mrs. Tabor was confined in the county jail, and at the time of the sale to M. H. Moore, S. H. Tabor, with the two minor children of himself and Mrs. Dora Tabor, continued to occupy and claim the same property as a homestead, which had theretofore been the homestead of the family, and which had been noted above. Lot No. 2, upon which was situated the dwelling house of the family, was never sold, and when Mrs. Tabor was released from the county jail she returned thereto and has occupied it as her home ever since.

The total consideration for the conveyance from S. H. Tabor to M. H. Moore was $565, of which amount $350 was evidenced by seven promissory notes executed by the grantee to the grantor for $50 each; $100 was paid in cash, and $115 was paid by the cancellation of an account in that sum then due M. H. Moore, who was a physician, for professional services rendered S. H. Tabor and his family during the year 1912. Later S. H. Tabor executed a release of the vendor's lien on the lot in consideration of the full payment of said notes. M. H. Moore then sold the lot so purchased from S. H. Tabor to Charles Hill, who in turn sold it to W. M. Priddy. All the deeds mentioned above were duly recorded.

S. H. Tabor died November 1, 1913. On November 19, 1914, Mrs. Dora Tabor, for herself and as next friend for Etta May Tabor and Myrtle Alice Tabor, minor children of herself and S. H. Tabor, instituted this suit against W. M. Priddy in the form of trespass to try title to recover all of lot No. 1 so sold to M. H. Moore by S. H. Tabor. Plaintiff also pleaded specially that defendant was claiming title under some character of deed to him and his vendors executed by S. H. Tabor, but that such conveyance was invalid by reason of the fact that at the time of the execution of such deed by S. H. Tabor the property was a part of the homestead of S. H. Tabor and his family, and the deed was never executed by his wife, Mrs. Dora Tabor.

The defendant Priddy, in addition to a plea of not guilty and a plea of innocent purchaser for value, and a plea of valuable improvements placed upon the lot by him in good faith, interpleaded his vendor Charles Hill, who likewise interpleaded his vendor, M. H. Moore, each of said vendees praying judgment on the warranty of title to him. Hill and Moore each filed an answer adopting the pleas filed by Priddy. By supplemental petition plaintiff denied the facts set forth in all those pleas.

Lot No. 1 was 170 feet in depth, a portion of which, 105 feet in depth, measured from the front and the entire width of the lot had been separated from the remainder by a fence and had been rented out. Plaintiffs were denied a recovery for that portion of the lot, but judgment was awarded in their favor against all defendants for the remainder, which was the rear portion of the lot, and also for rents. Judgment was also rendered on the warranties of title given by Moore and Hill in favor of their respective vendees. Defendants Moore and Hill have appealed from the judgments in plaintiffs' favor.

No findings of fact were filed by the trial judge who tried the case without the aid of a jury, but it is apparent that the recovery awarded was upon a finding, which was amply supported by the evidence, that the portion of the lot so recovered by plaintiffs was a part of the homestead of S. H. Tabor and his wife at the time of the sale to M. H. Moore, and that as the deed to Moore by S. H. Tabor was not executed and acknowledged by Mrs. Dora Tabor, it conveyed no title. Whether that conclusion was correct is the principal question presented by appellants here.

In Shields v. Aultman-Miller & Co., 20 Tex. Civ. App. 345, 50 S. W. 219, in which a writ of error was denied by our Supreme Court, the sale of the homestead by the husband alone while his wife was hopelessly insane was held to be a valid sale; and the evidence showed that the property constituting such homestead was the community property of the two. In the opinion rendered in that case, following a reference to the statutes authorizing the appointment of guardians of the estates of insane persons, and giving to the husband a preference right to such appointment for the estate of his insane wife, the court said:

"In the case under consideration the property was community property, and the homestead at the time of the sale, and was never abandoned, according to the findings of the jury upon the special issues submitted. Had the wife been sane, her consent to its alienation, expressed in the way provided by law, must have been obtained, in order to give the sale validity. Her personal consent was rendered impossible by her insanity. To have resorted to the guardianship proceeding would not have obtained her consent, and, unless the husband had authority to separately convey, the property was hopelessly tied up in his hands. It is an old-established maxim that the law never requires impossibilities. We think it also clear that courts ought not to construe laws regulating the conveyance of property so as to unnecessarily and unreasonably interfere with personal proprietorship therein. It is admitted in the pleadings of the parties, and an unquestioned fact in the case, that the wife was hopelessly insane when the property was occupied as a homestead; that she was in an insane asylum in St. Louis at the time it was sold by the husband; and that she has remained there, and continued insane, since. Under these conditions we think the husband had the right to sell the property."

As a second ground for sustaining the validity of that conveyance the court found as a fact that after the conveyance was executed the husband permanently abandoned the

property as a homestead, and that the abandonment had continued for a number of years before the acquisition of the property by Aultman-Miller & Co., who purchased it in good faith and for value, and held that after such abandonment the deed executed by the husband before the abandonment became effective; citing in support of that conclusion Marler v. Handy, 88 Tex. 422, 31 S. W. 636.

In Gilley v. Troop, 146 S. W. 954, this court sustained the validity of a conveyance of a homestead by the husband alone, while his wife was temporarily insane, and a writ of error was likewise denied in that case by the Supreme Court. That decision was based on two grounds: The first, because of the inability of the wife, through her insanity, to join in the conveyance, and upon the reasoning based upon that condition advanced in the decision in Shields v. Aultman-Miller & Co., supra, and the second upon the fact that the husband, after his wife had become insane, in good faith, and before the execution of the deed, had abandoned the homestead, which was his separate property, and had acquired another home in another state. In our opinion in that case reference was made to the fact that the insanity of the wife was temporary only, while in the Shields Case the insanity of the wife was permanent; but we reached the conclusion that such difference in the facts would not require a different conclusion upon the issue of the authority, vel non, of the husband to convey the homestead without being joined by his wife in the deed of conveyance.

[1-3] Article 3594, 2 Vernon's Sayles' Texas Civil Statutes, reads:

"Where the wife dies or becomes insane, leaving a surviving husband and child, or children, the husband shall have the exclusive management, control and disposition of the community property in the same manner as during her lifetime, or sanity; and it shall not be necessary that the insane wife shall join in conveyances of such property, or her privy examination and acknowledgment be taken to such conveyances, subject, however, to the provisions of this chapter."

In order for the husband to avail himself of the authority given by the foregoing statute, other articles of the same chapter of the statutes require him to make application to the county court therefor, to return an inventory and appraisement of such community estate, and to execute a bond in a sum equal to the value of the entire estate.

In Gibson v. Pierce, 146 S. W. 983, the Court of Civil Appeals of the Eighth District held that in the absence of a compliance with the provisions of those statutes, the husband, during the insanity of the wife could not convey her one-half interest in lands belonging to the community estate of the two spouses, even though, in so doing, he acted in good faith and not for the purpose of defrauding his wife. But our Supreme Court granted a writ of error in that case, reversed the decision of the Court of

Civil Appeals, and sustained the validity of the conveyance of the entire title. In that case it appeared that the vendee of the husband, in part consideration for the conveyance, assumed payment of a community debt secured by mortgage lien upon the land, the debt having been incurred and the mortgage given while the wife was insane, but which debt lacked ten months of being due at the time of the conveyance, and the Supreme Court's decision was upon the hypothesis that the sale was made for the purpose of paying that indebtedness, although it does not appear that there was any specific finding of that fact by the jury, nor by the Court of Appeals. It was held that when the wife is insane, the right of the husband to sell community property for the purpose of paying community debts, without complying with the provisions of the statutes mentioned above, is the same as his right to sell such property for the purpose of paying community debts after the death of the wife without any administration upon her estate; that the powers conferred by statute for administration upon community property when the wife is insane are cumulative to his authority, independent of the statute, to make such sales for the purpose of paying community debts. In that case the land in controversy consisted of a tract of some 730 acres, 200 acres of which was the homestead of the family when the wife became insane, and continued such homestead for some years thereafter, but was abandoned by the husband during said mental condition of his wife. The act of such abandonment of the homestead having been in good faith on the part of the husband, it was held by the Supreme Court, in effect, that the question of the right of the husband to sell the homestead during the insanity of his wife was not involved. See Pierce v. Gibson, 184 S. W. 502.

In the present suit, the good faith of the husband in the sale to M. H. Moore, was not questioned; in other words, there was no contention that he made the sale for the purpose of defrauding his wife of her community or homestead rights in the property.

We are of the opinion that the conclusion reached in the case of Shields v. Aultman-Miller & Co., and in Gilley v. Troop, discussed above, in effect, that the insanity of the wife, even though the same was of a permanent character, would of itself authorize the husband alone to convey the homestead, was unsound. The denial of a writ of error by our Supreme Court in each of those cases does not necessarily imply an approval of that conclusion by the Supreme Court, since, as shown already, the decision in each of those cases was predicated also upon a finding of fact that the husband had abandoned the property as a homestead; in the Shields Case the abandonment occurring after the deed was executed, and in the Gil-

ley Case the abandonment occurring before the execution of the deed in controversy.

Section 50 of article 16 of our Constitution expressly . prohibits the sale of the homestead by the husband without the consent of the wife, given in such manner as may be prescribed by law; and by statutory enactment in order to convey the homestead it is required that the wife shall join with the husband in the deed thereto, and to privily acknowledge the same before an officer authorized to take acknowledgments. To give effect to the deed of S. H. Tabor in controversy in this suit clearly would be to violate the express provisions of the Constitution and statute, and, in order to uphold it, it would be necessary to bring it within some authorized exception, if any there be, to those enactments. By a long line of decisions of this state, beginning with Wright v. Hayes, 10 Tex. 135, 60 Am. Dec. 200, an exception has been ingrafted upon the statutes of this state which authorize the husband alone to control, manage, and dispose of community property of himself and wife other than the homestead. According to those decisions, when the husband has abandoned the wife, leaving such property, she is authorized to dispose of it, whenever such disposition becomes necessary for the support of herself and family. In Cheek v. Bellows, 17 Tex. 617, 67 Am. Dec. 686, the Supreme Court said:

"She and her children are entitled to a support from the property; and if the husband is absent, there is no reason or rule of law that would prohibit the wife from making a contract to meet the necessities of the case. It would be a strong case that would permit her to go further."

In Heidenheimer v. Thomas, 63 Tex. 287, it was held that a deed to the homestead, executed by a wife during the insanity of her husband, was invalid. That deed was executed in consideration of the satisfaction of a debt owing by the husband and the property, which had a rental value of $40 or $50 per month, was the only means of support left to the family. After reviewing the authorities authorizing the sale by the wife of community property to supply the necessities of the family, when her husband has abandoned her, and in holding that that rule did not apply to the deed there under consideration, the Supreme Court used the following language:

"If such a rule existed, it could only spring from the necessity of the family to have a support; to which the sale, in the case under consideration, could in no manner have contributed. Upon the contrary, such a sale would have deprived the family of the only piece of property which could have contributed to its support."

The cases of Shields v. Aultman-Miller Company and Gilley v. Troop, are the only decisions in this state which we have found holding that the insanity of the wife would of itself authorize the husband to execute a valid conveyance of the homestead before the same is abandoned as such, and those deci-

sions are contrary to all the decisions in other states which we have been able to find upon that question. In 21 Cyc. 541, discussing the sale of homestead, it is said:

"If the husband or wife is insane when the joint conveyance or mortgage is executed, the conveyance is invalid."

Several decisions in states other than Texas are cited in support of that text, one of which is Thompson v. N. E. Mortgage Security Co., 110 Ala. 400, 18 South. 315, 55 Am. St. Rep. 29. In that case a deed of conveyance of the homestead signed by the husband and also by the wife, who was insane at the time, was held to be void, and in the decision the following was said:

"The purpose of the statutes in securing an exempt homestead to every resident of the state, and in requiring the wife's voluntary signature and assent to any alienation thereof when belonging to the husband, is to protect the wife, and through her the family, in the enjoyment of a dwelling place. Turner v. Bernheimer, 95 Ala. 241 [10 South. 750], 36 Am. St. Rep. 207. This court, as well as those in other states having a similar system, has adopted a strict rule on this subject, in accordance with which it is generally held that to convey the homestead there must be a strict compliance with the statutory mode of alienation. * * * The insanity of the wife does not dissolve the bond of marriage, nor withdraw her or her family from the beneficent purpose of the homestead laws. The statute is plain, unambiguous and admits of no exceptions, which would destroy its obvious design. If the occupant be a married man, the voluntary signature and assent of the wife, evidenced in the manner prescribed, are essential to a valid alienation of the homestead, unless the conveyance be made to her. Efforts have been made to ingraft other exceptions, arising out of the supposed necessities of the case, upon similar statutes, but they have uniformly failed."

Numerous decisions are cited in the opinion to support the holding so expressed. In Withers v. Love, 72 Kan. 140, 83 Pac. 204, 3 L. R. A. (N. S.) 514, the Supreme Court of Kansas reviewed the authorities at length upon the question now under consideration and reached the same conclusion as did the Supreme Court of Alabama in the case last cited. Among other authorities the case of Shields v. Aultman-Miller Company is cited, but is criticized as unsound. To the same effect are Alexander v. Vennum, 61 Iowa, 160, 16 N. W. 80; Adams v. Gilbert, 67 Kan. 273, 72 Pac. 769, 100 Am. St. Rep. 456; Ballenger v. Lester, 113 Ky. 96, 67 S. W. 266; Curry v. Wilson, 45 Wash. 19, 87 Pac. 1065.

In the present suit there was evidence sufficient to sustain a finding that the sale of the lot in controversy by S. H. Tabor to M. H. Moore was not made for the purpose of paying the community debt of $115 then owing to Moore for professional services; and if that were the controlling issue in the case as it was in the decision by the Supreme Court, in Pierce v. Gibson, such a finding would be presumed in support of the judgment. But even though the evidence had shown, and the trial court had found, that said sale was made for the purpose of paying that debt, the rear portion of lot No. 1,

which constituted a part of the homestead, and judgment for which was rendered in favor of Mrs. Dora Tabor and her children, was not subject to the payment of that account. Hence it cannot be said that the sale of that part of lot No. 1 was necessary, in a legal sense, to pay that debt. Nor was there any showing in the evidence that any part of the consideration was necessary for the support of the family, nor that the husband sold the same for the purpose of reinvesting the proceeds in another homestead. The case merely shows a sale of a part of the homestead by the husband alone, without being joined in the sale by his wife, and without first abandoning the property as a homestead and without any showing of any necessity therefor. The sale in controversy was clearly in violation of the Constitution and statutes, and according to the reasoning of the Supreme Court in Heidenheimer v. Thomas, and authorities there cited, it could not, in any event, be sustained in the absence of a showing of some necessity therefor, and even though it could be said that necessities, such as indicated above, would create a proper exception to the constitutional and statutory restrictions against his power to sell the homestead without the consent of his wife, the case does not come within any such exception, and for the reasons above given we hold that the sale of the rear end of lot No. 1, which constituted a part of the homestead, was invalid, and, accordingly, the opinion heretofore rendered by us, in which we reached a conclusion adverse to the foregoing, is withdrawn. That conclusion renders it necessary to dispose of other assignments of error presented by appellants which were not considered upon the original hearing, and those assignments will now be discussed.

The trial of the case was on the 25th day of May, 1915, at which time a judgment was rendered in favor of plaintiffs for a strip off the rear end of lot No. 1, the lot in controversy, 85 feet in length and the width of the lot. The court also at that time rendered judgment in favor of Priddy against his vendor, defendant Hill, for $75, and in favor of Hill against defendant Moore for the same sum; such judgments over being upon the respective covenants of warranty of title in the deeds of conveyance executed by the defendants to each other. Defendants Priddy, Moore, and Hill all filed motions to set aside that judgment and grant a new trial of the case.

Those motions were heard on July 20, 1915, during the same term of court at which the judgment had been rendered. Upon that hearing the trial judge, upon his own initiative and over the objection of defendants Hill and Moore, heard further testimony, after which he reformed the judgment theretofore rendered so as to reduce the portion of the lot in controversy awarded to plaintiffs from a length of 85 feet, as originally decreed, to a length of 65 feet, and so as to increase the amounts of judgments over in favor of defendant Priddy against Hill to $275, and $16.50 interest thereon, and in favor of Hill against Moore to $275, with $24.75 interest thereon; such judgments over being upon the respective warranties of title given to those parties in the respective sales by one to another.

It appears that the court had intended to give judgment for plaintiffs for all that portion of the lot in controversy lying north of a fence separating that portion from the remainder upon which the rented house had been erected, and which remainder was awarded to defendant Priddy; and just where this fence was located was one of the issues upon which additional testimony was heard; the only other issue upon which additional testimony was heard being the relative value of the strip 65 feet in length off of lot No. 1, that was finally awarded to plaintiffs, as compared to the consideration paid by each of the defendants for said lot in its entirety. Bills of exception contained in the record recite that at the time the court announced his intention to hear further testimony, he stated that he would overrule the motions of all the defendants for a new trial, but would hear further testimony as to the value of the land adjudged to plaintiffs, but upon no other issue. The bills recite further:

"Thereupon defendants Hill and Moore objected to reopening the case and the introduction of new testimony upon that issue alone, for the reason that said action by the court was in effect the granting of a new trial upon that issue alone; but said defendants Hill and Moore asked that if the judgment was set aside on any issue whatever that a new trial be granted as to all parties and all issues."

And further that:

The "defendants Hill and Moore offered to and could have proved by the defendant M. H. Moore that when he bought the property in controversy from S. H. Tabor that said Tabor owed him a large bill of about $165 for medical services, and that said Tabor owned no other property except the lot in controversy and the house and lot on which he lived, and that the witness Moore was mistaken in his testimony upon the trial of this cause on the 26th day of May, 1915, when he testified that the said Tabor had other property, as said property had been sold by the said Tabor prior to that time, and the said defendants Hill and Moore also offered to and could have proved by the witness Sam Wisdom that the time the said S. H. Tabor sold the lot in controversy to M. H. Moore that he (Tabor) owed the bill to said Moore, and in addition thereto the said Tabor owed large sums for groceries and other things, and that all such bills and accounts were community debts of the said Tabor and his wife, who was then insane, and that there was no property, either community or separate, owned by Tabor with which said debt could be paid, except the homestead and the lot in controversy, and that the said Tabor had no means of paying same except by a sale of said property, which said testimony was offered by the defendants Hill and Moore after the court had reopened the case upon the issue of valuation, and in effect had granted a new trial to defendant Priddy upon that one issue, but the

court refused to hear said testimony of the said witnesses M. H. Moore and Sam Wisdom, as above set out, and refused to permit said witnesses to be sworn, and announced that he would not hear said testimony."

Error has been assigned to the rulings of the court in admitting such additional testimony, and to the refusal of further testimony offered by appellants and recited in the bills of exception, as shown above.

[4] It thus appears that the only objection to the admission of the additional testimony heard was that such action was, in effect, the granting of a new trial upon one issue alone, which the court had no authority to do. There was no claim made that appellants could rebut such additional testimony by other evidence, or that appellants desired so to do, nor was there a request for time to produce further testimony upon the issue of the relative value of the strip finally awarded to plaintiffs as compared to the consideration paid by defendants for the lot as a whole. In other words, the objection urged merely challenged the legal authority of the court to hear such additional testimony.

Independent of statutory provisions for the correction of judgments, it is a familiar rule of common law that courts retain complete control over judgments during the terms at which they are rendered, and, while such terms continue, may set aside, correct or reform them. Henderson v. Banks, 70 Tex. 398, 7 S. W. 815; Sugg v. Thornton, 73 Tex. 666, 9 S. W. 145; 23 Cyc. 859, 860. And in 38 Cyc. p. 1360, the following is said:

"A motion to reopen a case for the purpose of introducing further evidence in the cause is addressed to the sound discretion of the court, which is not subject to review, unless there has been an abuse thereof."

Again in the same volume on page 1368:

"It is discretionary with the court what further evidence it will hear after the case has been reopened. Thus if the court grants leave to introduce further specific testimony, it is discretionary with the court whether it will permit the introduction of other evidence than that specified, and, unless an abuse of this discretion appears, refusal to permit evidence other than that specified is not ground for reversal."

See, also, Riverside Portland Cement Co. v. Masson, 69 Or. 502, 139 Pac. 723, Ann. Cas. 1916A, 127, to the same effect, and supported by other authorities therein cited.

As noted already, the trial was by the court without a jury, and the correction and reformation of the judgment was at the same term of court during which the original judgment was rendered; and as appellants' objection to the admission of further testimony was confined alone to á challenge of the authority of the court to thus reopen the case in part, and as they did not offer other evidence in rebuttal of that heard and made no showing that such testimony could be procured, it clearly appears that the trial judge did not abuse the discretion vested in him to hear such additional testimony. In the absence of any showing to the contrary,

it must be presumed that such further hearing was necessary to the ends of justice, and that the necessity arose from a lack of sufficient evidence upon those issues, or that the action of the court in hearing it was induced by some contention presented by appellants' motion for a new trial, which was then presented by appellants, but which does not appear in the record before us. 38 Cyc. 1361, 1362.

[5] In view of our conclusion expressed above upon the issue of the right of S. H. Tabor to sell a part of his homestead without being joined in the deed by his wife, the refusal of the court to hear the further testimony offered by appellants at the time the judgment was reformed and corrected did not constitute reversible error, since, even though it be accepted as true, it could not change those conclusions. If such testimony was true, then S. H. Tabor was insolvent, owned no property except his homestead, which was not liable for any of the debts, and had no means of support for himself, his insane wife, and two young children, except his own labor. In our opinion such proffered testimony would tend to support, rather than militate, against our conclusions upon that issue. Heidenheimer v. Thomas, 63 Tex. 287.

For the reasons indicated, appellees' motion for rehearing is granted, our former judgment of reversal is set aside, all of appellants' assignments of error are overruled, and the judgment of the trial court is affirmed.