Submitted on record and briefs November 13, affirmed December 18, 1978

In the Matter of the Conservatorship of
John F. Driscoll, an incapacitated person.
DRISCOLL et al, *Respondents,*
*v.*
JEWELL, *Appellant.*
(No. 4688, CA 11211)

588 P2d 49

George G. VanNatta and VanNatta & Petersen, St. Helens, filed the brief for appellant.

Robert A. Lucas, P.C., and Lucas & Petersen, St. Helens, filed the brief for respondents.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

THORNTON, J.

**THORNTON, J.**

The primary issue in this case is the extent of the authority of the court to remove a conservator of an incompetent person. ORS 126.267 provides:

> "The court may remove a conservator for cause, upon notice and hearing, or accept the resignation of a conservator. After his death, resignation or removal, the court may appoint another conservator. A conservator so appointed succeeds to the title and powers of his predecessor."

The subject of the controversy is John Driscoll, a generally healthy gentleman,[1] (hereinafter father) 90 years of age at the time of trial. Father has three adult children, among them a daughter, respondent, who lives in St. Helens, about two miles from a small home in which father resides by himself. A son, petitioner, also maintains a residence in St. Helens, but due to his service with the merchant marine is required to be at sea approximately six months per year.

During the summer of 1977, father fell ill with a serious case of gout. While he was ill, father's daughter visited him and discovered that he needed substantial assistance. She made sure he received medical care, and with the help of a housekeeper spent several days cleaning his house. She also brought him meals during the worst of his illness. On June 21, 1977, she petitioned the court to be made conservator of his affairs, and when father did not respond to notice, the petition was granted.

Because of the constraints the conservatorship imposed upon father's ability to handle his own affairs, previous minor frictions between him and respondent were exacerbated. The relationship deteriorated to the point that father refused to allow

---

[1] Petitioner submitted a psychiatric report from the Veterans Administration, dated August 24, 1977, which concluded with the following: "Impression: This man is competent to handle his own affairs. No psychiatric disorder is noted."

respondent into his house, according to her testimony, striking her when she attempted to gain entrance.

Petitioner returned from sea subsequent to the establishment of the conservatorship, and pursuant to ORS 126.273[2] petitioned the court to remove the conservatorship of father. Although another voyage required that petitioner leave the state prior to the hearing on the petition, a stipulation at trial allowed the court to receive testimony from petitioner over the telephone. Petitioner testified that he did not believe father needed a conservator, but responded to questioning by the court as follows:

"THE COURT: But now this is my question to you, because what I am going to try to pose to the attorneys, and maybe they can resolve it some way, but you think that if there had to be a conservatorship, someone other than your sister would be better?

"A: Definitely. That would take the aggravation away from him, that part. And she can still go over and see him. He loves her; that is his daughter, and I am sure she loves him. * * *"

On May 9, 1978, the court entered an order relieving respondent of her duties as conservator and appointing Arthur D. Rotter, the local postmaster and friend of father, as conservator. It is this order from which respondent appeals, contending that the trial court abused its discretion by removing her as conservator with no demonstration of "cause," as required by ORS 126.267, and by replacing her with someone from outside of the family.

ORS 126.267 has not previously been construed in the appellate courts of this state. Respondent relies

_____
[2] ORS 126.273(1)(d) and (e) provides:

"(1) Any interested person or other person interested in the welfare of a person for whom a conservator has been appointed may file a petition for an order:

"* * * * *

"(d) Removing the conservator and appointing a temporary or successor conservator; or

"(e) Granting other appropriate relief."

upon a number of public employe cases in which termination for cause appears to be required. In *Kotan v. School Dist. No. 110C,* 13 Or App 139, 146-47, 509 P2d 452, 456 (1973), the only Oregon case cited by respondent, this court held that conduct by the school employe there involved did not meet the statutory requirements set forth in former ORS 342.530,[3] relating to the dismissal of teachers. That case construed specific statutory language referring to "inefficiency" and "insubordination," and we do not find it apposite in the instant context.

■■ Given the delicate nature of the proceedings, the wishes and desires of the protected person, while certainly not binding upon the court, should be accorded as much deference as possible.[4] When it becomes evident that an appointed conservator cannot properly carry out his or her functions because of the strong disapproval of the protected person, "cause" for the conservator's removal exists. Although the trial court did not enter specific findings of "cause" for the removal of respondent as conservator, on de novo review, ORS 19.125(3), we find adequate cause in the friction between the conservator and protected person.

■ Nor do we perceive an abuse of discretion in the court's appointment of Arthur Rotter as conservator in lieu of respondent. In *Shaw v. Christoffersen,* 190 Or 279, 223 P2d 1039, 21 ALR2d 873 (1950), the Supreme Court had occasion to pass on a similar question in a guardianship proceeding. There the court held: "The conclusion at which the trial court arrived in the exercise of its discretion is entitled to great weight on appeal." 190 Or at 284. The trial court's conclusion was reversed, however, in part because it did not give preferential consideration to blood relatives over a stranger.

---

[3] ORS 342.530 was repealed by Oregon Laws 1973, ch 298, § 9.

[4] *See,* ORS 126.233.

The record does not indicate whether father was either consulted or notified in connection with the proposed substitution of conservators.

"We do not say that, if a qualified blood relative is willing to act, the appointment of a stranger as guardian is necessarily an abuse of discretion. We feel, however, that a qualified blood relative should, as a general rule, have preference, and that a stranger should not be appointed in preference to such qualified blood relative without stronger reasons than appear in the case at bar." 190 Or at 286.

In the instant case the only available blood relative, respondent, has already been appointed conservator and removed for cause. Under the circumstances, we believe that an adequate showing has been made for the court's exercise of its discretion appointing a nonrelative as conservator.[5]

Affirmed.

---

[5] Petitioner did not appeal from the decree continuing the conservatorship and appointing Mr. Rotter as conservator.